# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| PATRICK M. MURRAY, | |
| Plaintiff, | No. C06-4065-MWB |
| vs. | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the court on judicial review of the denial of the plaintiff Patrick M. Murray's claim for disability insurance ("DI") benefits under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*

On or about October 7, 2002, Murray filed his application for DI benefits, alleging an inability to work since October 31, 1999.[1] Murray's application was denied initially and on reconsideration. Murray requested a hearing, and a hearing was held on August 23, 2004, before Administrative Law Judge ("ALJ") George Gaffaney. (*See* Supplement to administrative record, filed March 9, 2007) On December 15, 2004, the ALJ issued his decision, finding that Murray had not engaged in substantial gainful activity ("SGA") from October 31, 1999, through December 31, 2000, but he had engaged in SGA during the year 2001. The ALJ therefore remanded the case for aa disability determination for the time period of October 31, 1999, through December 31, 2000. (R. 110-12)

Murray appealed the ALJ's decision that he had engaged in SGA during 2001. On February 24, 2006, the Appeals Council of the Social Security Administration granted Murray's request for review. (R. 116-19) On July 26, 2006, the Appeals Council issued

---

[1]Murray concurrently filed an application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*; however, Murray's SSI application is not the subject of this action. Murray's SSI application was denied on October 7, 2002, because the extent of his resources was in excess of the maximum limit that would allow him to receive benefits. (*See* R. 29-32)

a decision holding that no disability determination was necessary for the October 31, 1999, through December 31, 2000, time period, because Murray could not established that he was disabled prior to his date last insured (i.e., December 31, 1999)[2], and he had engaged in SGA within the twelve-month period preceding the date of his application.[3]  (*Id.*; *see* R. 11-12, 14-15)  The Appeals Council's decision represents the final decision of the Commissioner.

Murray filed a timely Complaint in this court (Doc. No. 3), seeking judicial review of the Appeals Council's decision.  On November 27, 2006, the undersigned granted the Commissioner's motion to remand this case pursuant to sentence six of 42 U.S.C. § 405(g), because the Commissioner was unable to locate the administrative record.  (*See* Doc. Nos. 6 & 11)  Upon remand, a new hearing was held on January 4, 2007, again before ALJ Gaffaney.[4]  (R. 8-28)  On January 23, 2007, the ALJ issued a decision in which he adopted the July 26, 2006, Appeals Council decision in its entirety.  (R. 5-6)

### *Standard of Review*

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards, and whether the factual findings are supported by substantial evidence on the record as a whole.  *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007)

---

[2]To receive DI benefits, Murray must establish that he was disabled prior to his date last insured of December 31, 1999.  *See* 42 U.S.C. §§416(i)(3)(B) & 423(C)(1)(B); 20 C.F.R. § 404.130.

[3]Murray filed his application on October 7, 2002.  Under the regulations, he may receive Title II benefits, if at all, only up to a date twelve months preceding the date of his application; i.e., only until October 7, 2001.  *See* 20 C.F.R. § 404.621(a).  Because the Appeals Council ruled Murray was engaged in SGA during 2001, and he therefore could not have received benefits up to twelve months preceding his application date, the Appeals Council concluded the issue was moot as to whether Murray was disabled during the period from October 31, 1999, through December 31, 2000.

[4]The court notes ALJ Gaffaney misunderstood the nature of a sentence six remand, stating "the Magistrate Judge had indicated that he's keeping jurisdiction of this somehow.  That's not allowed for in any of our regulations. . . ."  (R. 15)  *See, e.g., Hanson v. Chater*, 895 F. Supp. 1279, 1288 (N.D. Iowa 1995) ("The court will retain jurisdiction and reserve final judgment until the parties have complied with the statutory post-remand requirements of 42 U.S.C. § 405(g)."); 42 U.S.C. § 405(g), sentence six.

(citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999), in turn citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). Under this standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)); *accord Page* 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." Quoting *Haggard*, 175 F.3d at 594); *Pelkey, supra* (quoting *Goff*, 421 F.3d at 789).

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Krogmeier*, 294 F.3d at 1022. The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (also citing *Cline, supra*).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.*, 879 F.2d 441, 444 (8th Cir. 1989) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 99, 101 S. Ct. 999, 1006, 67 L. Ed. 2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record *de novo*." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to

3

draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992), and citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)); *accord Baldwin*, 349 F.3d at 555; *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); *accord Krogmeier,* 294 F.3d at 1022 (citing *Woolf*, 3 F.3d at 1213). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff*, 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *accord Page*, 484 F.3d at 1042-43 (citing *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004); *Travis v.. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007); *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006)).

### *Factual Background*

In his brief, Murray provides the following concise summary of the unrebutted factual and procedural history relevant to the court's review:

> Prior to Murray's heart attack on October 31, 1999, Murray had been self-employed selling various forms of insurance over a ten year period. (R. 24 and 47). Murray also had two businesses he had formed: P&G Mfg., Inc. and P&G Associates. (R. 46). P&G Mfg. produced and sold women's nail files, but Murray had not been running this corporation over approximately 10 years. (R. 46). This company is gradually being dissolved. (R. 46). P&G Associates, in which Murray is a partner with Gary Hirschauer, sold Tahitian Noni Juice. (R. 23 and 46). Murray spent approximately 2 days per [week] or 16 hours per month operating this business. (R. 23 and 46).
>
> After the October 31, 1999, heart attack, Gary Hirschauer approached Murray in March or April 2000, and

4

> asked if Murray would like to ride along with him and start training to solicit customers for a local life insurance agent. (R. 27). Murray rode along with Hirschauer, and approximately 3 months later, began soliciting customers . . . on his own. (R. 27). Murray became associated with an insurance agency owned by Juanita Wolfe, and Wolfe agreed that if Murray picked up a policy, she would split the commission with him. (R. 19-20). Murray's role involved making "cold calls on people", which continued until October, 2001. (R. 22).
>
> Sometime around June or July 2000, Murray stumbled upon a large policy regarding an insured named "Celesta M. Craig Trust Fund." (R. 20). The insured needed to roll-over a policy from one company to another, and Murray facilitated the 1035 exchange. (R. 21). The policy was written in November 2000, but Wolfe's company did not get paid until 2001 as the money had not come through yet. (R. 21).
>
> During the 19-20 month period with Wolfe's agency, Murray had only the one successful sale, which resulted in a fee of $40,000.00 to Ms. Wolfe. (R. 17). Murray's 50/50 share netted approximately $19,000.00 and on Murray's 2001 tax return, after deducted expenses for self-employment tax, he had a net income of $11,885.00. (R. 16).
>
> At the [first] hearing and decisions, this $11,885.00 figure for 2001 was divided by 10 (months worked in 2001), for a total of $1,188.50, and [was] found to be in excess of the $740.00 monthly limit for 2001; Murray's claim for social security benefits was thereby [sic] denied due to his "engaging in substantial gainful activity in 2001." (R. 16).
>
> Murray ultimately found that the stress was too much due to his heart trouble and he also began helping his father, who was 93 at that time. (R. 22). Murray thereafter ceased selling life insurance. (R. 22). Murray testified to the ALJ that his entire association with Wolfe's agency lasted approximately 19-20 months. (R. 23).

Doc. No. 16, pp. 4-5)

The court adopts Murray's statement of facts, which are unrebutted in the record, for purposes of this review.

5

*Analysis*

The issue before the court is whether substantial evidence on the record as a whole supports the Commissioner's decision that Murray performed SGA during 2001. Murray argues the Appeals Council based its decisions on the wrong section of the applicable regulations. The Appeals Council explained its decision, in relevant part, as follows:

> The claimant's attorney maintained [at the second hearing] that the self-employment income included as earnings for the year 2001 should be considered as earned over the duration of the claimant's self-employment as an insurance salesman which began in March or April of 2000, and continued through October 2001 (January 4, 2007 hearing Tr. pp. 14-16). By including the months of self-employment in the year 2000 as well a[s] the year 2001, the claimant's monthly earnings would be less than the amounts presumed to be substantial gainful activity provided in 20 CFR § 404.1574 (*See also* 20 CFR § 404.1575(c)). However, this position is inconsistent with the requirements of 20 CFR § 404.428(b) which provides that net earnings from self-employment are derived, or incurred, and includable as earnings in the year for which such earnings are reportable for Federal income tax purposes.

(R. 5-6)

Murray argues the regulation upon which the Appeals Council relied, 20 C.F.R. § 404.428(b)[5], is inapplicable to the determination of whether he performed SGA during 2001. Rather, he asserts that section only applies when the Commissioner is determining whether a claimant *who already is receiving benefits* should have those benefits increased or decreased based on the claimant's earnings. Thus, he argues section 404.428(b) has no bearing on the initial disability determination. (*See* Doc. No. 16 at 9-11) Instead, Murray argues the applicable regulations for determining whether he was engaged in SGA during 2001 are found in 20 C.F.R. § 404.1501 *et seq*.

---

[5]20 C.F.R. § 404.428 describes an "annual earnings test" that is applied to the earnings of an individual receiving benefits. Subsection (b) specifies that a self-employed individual's taxable year is considered to be a calendar year absent proof to the contrary.

6

The Commissioner concedes that 20 C.F.R. § 404.428(b) "is not specifically applicable," but argues "the guidance provided in that section is instructive in connection with consideration of 20 C.F.R. § 404.1574a, which was cited by the ALJ and which concerns how the Agency averages earnings." (Doc. No. 19 at 6) The Commissioner goes on to discuss how the Agency applied 20 C.F.R. § 404.1574a to the facts of this case, never explaining how "the guidance provided in" section 404.428(b) "is instructive" in this case. (*See* Doc. No. 19 at 6-7)

The fighting issue between the parties concerns the application of 20 C.F.R. § 404.1574a, which provides in relevant part as follows:

> (a) If your work as an employee or as a self-employed person was continuous without significant change in work patterns or earnings, and there has been no change in the substantial gainful activity earnings levels, we will average your earnings over the entire period of work requiring evaluation to determine if you have done substantial gainful activity. . . .
>
> . . .
>
> (c) If there is a significant change in your work pattern or earnings during the period of work requiring evaluation, we will average your earnings over each separate period of work to determine if any of your work efforts were substantial gainful activity.

20 C.F.R. § 404.1574a(a) & (c). The parties have cited no cases interpreting 20 C.F.R. § 404.1574a, and the court has located none.

The Commissioner argues that because Murray testified he earned no income in 2000, and only received income during 2001, "[i]t is not outside the 'zone of choice' for the Agency to determine that this represents a significant change in his earnings in 2001, and to average these earnings for the period worked solely in 2001." (Doc. No. 19 at 7; citations omitted.) In response, Murray argues the Commissioner "relies upon a purely arbitrary division of time based upon the end of one calendar year and the beginning of the next." (Doc. No. 22 at 2) He further asserts, "This arbitrary division completely defeats the purpose of subsection (a), which indicates that the average should be taken over the

7

'entire period of work requiring evaluation.'" (*Id.*) Murray notes the record contains no evidence that his work activities changed during the time period from June 2000 to October 2001, and the fact that the single commission he earned during that entire time period happened to be paid during calendar year 2001 does not reflect any "significant change in earnings" that would allow the Agency to average his earnings over some arbitrary calendar year time period. (*Id.*)

The court find the Commissioner's argument to be more than a bit strained. The evidence of record shows Murray engaged in exactly the same work activity from the time he began attempting to solicit insurance customers in approximately June 2000, through the time he ceased that activity in late 2001. He began soliciting his one successful sale in the summer of 2000, consummated the sale in November of 2000, and finally received his commission in 2001. The record does not contain substantial evidence to support the Commissioner's conclusion that this represents a "significant change in earnings" between 2000 and 2001, and the court agrees that separating those calendar years for purposes of averaging Murray's income is arbitrary and unwarranted by the evidence.

Consistent with the regulations, Murray's income should be averaged over the entire period of time he was engaged in the work activity that resulted in the single commission payment. Although there is some discrepancy in the record as to the exact length of time during which Murray engaged in the activity (*compare* R. 17 *with* R. 24, *and see* Doc. No. 16 at 13 n.1), the difference is irrelevant. Even using the shorter seventeen-month length of time cited by the ALJ (*see* R. 24), Murray's average income would fall below the maximum earning levels for substantial gainful activity for both 2000 and 2001.[6]

---

[6]The applicable earnings cap in 2000 was $700 per month, and in 2001 was $740 per month. *See* 20 C.F.R. § 404.1574(b)(2)(ii); http://www.ssa.gov/OACT/COLA/SGA.html. Averaging Murray's income over a period of seventeen months results in a monthly income of $699.12.

8

*Conclusion*

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[7] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that the Commissioner's decision be reversed and this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings to determine whether Murray has been disabled since October 31, 1999, his alleged disability onset date.

**IT IS SO ORDERED.**

**DATED** this 19th day of November, 2007.

*[signature]*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[7]Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).